UNITED STATES of America

v.

Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.

No. SSS 82 Cr. 0312 (KTD).

United States District Court, S.D. New York.

June 21, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel.

Sekou Odinga, pro se.

Jesse Berman, New York City, for defendant Cecil Ferguson.

William Mogulescu, New York City, for defendant Edward Joseph.

Chokwe Lumumba, Detroit, Mich., Lynn Stewart, New York City, for defendant William Johnson.

Susan Tipograph, New York City, for defendant Silvia Baraldini.

Lawrence Stern, New York City, for defendant Iliana Robinson.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Beginning June 8, 1983, I held a *Wade* hearing outside the presence of the jury to determine the admissability of witness Kamau Bayete's in-court identification of defendants Odinga, Ferguson, Joseph, Sunni-Ali, Baraldini, and Robinson. I found that the pretrial identification procedures followed by the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office were not suggestive and thus I permitted Mr. Bayete to identify the above defendants before the jury. The following shall constitute my findings.

Dr. Bayete was an acupuncturist at the Black Acupuncture Advisory Association of North America ("BAAANA") at 245 West 139th Street in Manhattan. Bayete testi-

fied that each of the defendants except perhaps Odinga had frequented BAAANA, as patients, students of acupuncture, and at times to plan the commission of robberies.

Bayete is an admitted drug abuser whose primary motive in testifying appeared to be to avoid imprisonment for drug offenses. He also admitted to lying both to the grand jury and to the FBI on numerous occasions. Nonetheless, the defendants did not seriously dispute Bayete's identification of the defendants. His contacts with the defendants both inside and outside BAAANA were extensive. Much of these contacts are independently corroborated. *See, e.g.,* affidavits in support of wiretap applications. Thus, the key credibility determination is not whether Bayete knew the defendants, but rather whether the defendants committed the acts Bayete alleged. The latter, however, is a determination for the jury. Nevertheless, I will discuss Bayete's identifications to remove any question of the constitutionality of the admission into evidence of the identifications.

The first issue is whether the "pretrial identification procedures employed were in fact suggestive." *Solomon v. Smith,* 487 F.Supp. 1134, 1141 (S.D.N.Y.1980), *aff'd,* 645 F.2d 1179, 1186 (2d Cir.1981). If the procedures utilized were suggestive, I must then decide by considering the "totality of circumstances" whether Bayete's in-court identifications are so tainted by the suggestive procedures to be rendered inadmissible. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1973). These safeguards are to insure that the defendants' rights are not violated by allowing identification procedures that present "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ I am satisfied that the government techniques utilized herein were not suggestive. At various times Bayete was shown groups of photographs by the FBI. Included in the groups were pictures at least of defendants Ferguson, Joseph, and Baraldini. Bayete identified these photographs at that time, and later before the grand jury. Before Bayete was shown any groups of photos, he was asked by the FBI to identify persons he knew; he was not told to look for particular persons. Bayete also identified others in the groups of photos, but these persons are not on trial. Some of the persons were not identified at all. Bayete denied all defense counsels' attempts to imply that he was encouraged to identify certain persons, specifically the defendants, or that he was shown individual photos and not groups of photographs. The one exception to the manner in which he was shown photographs involves defendant Robinson, which I will discuss below.

■ In addition, any potential suggestiveness in the identification procedures was nullified by the extent of Bayete's contacts with the defendants. In *Neil v. Biggers* and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court delineated the five factors to be considered in evaluating the potential for mistaken identification.

> These factors are (1) the witness's opportunity to observe the criminal at the time of the crime, (2) the degree of the witness's attention at that time, (3) the accuracy of the witness's initial description of the criminal, (4) the certainty with which the witness first identified the suspect, and (5) the time lapse between the crime and the identification.

*Solomon v. Smith,* 645 F.2d at 1186; *see Manson v. Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253. Bayete's testimony satisfied all these criteria.

1. Defendant Joseph

Bayete had extensive contacts with defendant Joseph who he also knew as "Tony," "Jamal," and "J." He first met Joseph in June or July of 1980, and then saw him at least twice a month over the next year and a half. These contacts involved various activities. For example, Joseph came to the BAAANA clinic several times for treatment of a gunshot wound. Bayete assisted with this treatment on one occasion. Joseph also came to BAAANA on

a number of occasions with friends that he brought for treatment. Bayete saw Joseph at a martial arts exhibition, and at several robbery training sessions. Bayete also attended a meeting in Manhattan at which Joseph was present to plan the robbery in Nanuet, New York. On the evening of October 20, 1981 Bayete drove up to the Mt. Vernon safehouse with Joseph, the defendant Robinson and a woman Bayete identified as Ginger. Bayete spent much of this evening with Joseph and drove back with him that night to Manhattan in the same maroon Cadillac that had taken them to Mt. Vernon. A few days later, Bayete also drove up to and back from Nyack, New York either with Joseph or in a companion car that went up with Joseph's.

Sometime in December, 1981 or January, 1982, Bayete bought some cocaine through Joseph. Soon thereafter, Bayete met with Joseph for the last time at Joseph's 14th Street apartment. Bayete was shown two photographs of Joseph on two separate occasions. These photographs were among a group of photographs shown to him by the FBI. On both occasions Bayete identified a picture of the defendant Joseph. Bayete's continued dealings with defendant Joseph remove any real possibility of mistaken identification.

### 2. Defendant Ferguson

Bayete first met the defendant Ferguson sometime in December, 1980. They met at a Kwansa celebration in uptown Manhattan. Bayete remembers that Ferguson, who was wearing a dashiki, was introduced by Mutulu Shakür as "Chui." Later Bayete also heard Ferguson referred to as "Mo." After their first meeting, Bayete saw Ferguson approximately four to five times per month often in or near the BAAANA clinic. By the middle of 1981, Ferguson had begun taking acupuncture classes, and later Ferguson assisted in the teaching of several of these classes. Bayete also met with Ferguson at several places outside the clinic including Ferguson's girlfriend's apartment at 110th Street, Joseph's 14th Street apartment, and at a movie theater on 42nd

Street. Bayete also noted several events at which he saw Ferguson. These included an evening in May, 1981 on the day that Samuel Brown was arrested, seven training sessions in preparation for the Nyack robbery, two apartments in the West 90's to plan the Nyack robbery, and at Nyack a few days after October 20, 1981. These numerous contacts render Bayete's in-court identification admissable.

### 3. Defendant Sunni-Ali

Bayete first met Sunni-Ali, who he also knew as "Spirit," at the Lincoln Detoxification Acupuncture Unit. He saw Sunni-Ali at another meeting at the Lincoln Detoxification Acupuncture Unit and then at least once or twice a month thereafter. Among these subsequent contacts were a number of meetings at BAAANA. The last time Bayete saw Sunni-Ali was in September, 1981 on a street in Mt. Vernon. This history of exposure to Sunni-Ali, in conjunction with his unequivocal identification defeats Sunni-Ali's arguments against admissability of the identification.

### 4. Defendant Odinga

Bayete testified that he first met Odinga outside Shaheem Jabbar's house in the summer of 1981. This meeting lasted five minutes. The next time Bayete met Odinga was in the Mt. Vernon safehouse on the evening of October 20, 1981. At this time, he saw Odinga for at least two to three hours. Odinga made no attempt to challenge Bayete's identification. Bayete does not remember if any photographs of Odinga were ever shown to him.

### 5. Defendant Robinson

Bayete first met Robinson at the beginning of 1981. After that he saw Robinson once or twice every month. The subsequent times included a number of meetings at BAAANA in which Bayete treated Robinson with acupuncture. He also saw her at a martial arts exhibition and at several robbery training sessions at the end of September, 1981. On the evening of October 20, 1981, Bayete drove up to Mt. Vernon

with Robinson and others. After they arrived in Mt. Vernon, Bayete spent the evening in an apartment where Robinson was present. Later that same night, he also drove back with her to Manhattan. Robinson also traveled with Bayete a couple of days after the October 20, 1981 incident from Manhattan to Nyack, New York and back. Although he could not recall during his testimony, Bayete apparently was shown a single photograph of the defendant Robinson. The number of meetings with Robinson, the duration of his exposure to her, and his certainty of identification, remove the likelihood of an impermissible identification, and provide an independent basis for the identification.

6. Defendant Baraldini

From the beginning of 1980 to the end of 1981 Bayete had numerous contacts with the defendant Baraldini. Baraldini came to the BAAANA clinic for a number of visits. Bayete also saw Baraldini at social events, meetings, and at a number of martial arts classes that Bayete gave to the May 19th Communist Organization, of which Baraldini is a member. Bayete stated that he was shown at least one photograph of Baraldini; this photograph was among twenty or more photographs. He identified the photograph as Baraldini at the time. His numerous contacts with Baraldini and the non-suggestiveness of the identification procedure render Bayete's identification of Baraldini admissible.

In sum, Bayete's pretrial identifications of defendants Odinga, Ferguson, Joseph, Sunni-Ali, Baraldini and Robinson pass constitutional muster. The pretrial identification procedures used by the government were not suggestive. Furthermore, even if they had been, Bayete had sufficient contacts with each of these defendants to support an objective identification under the *Biggers-Brathwaite* analysis. Accordingly, Bayete was permitted to identify each of these defendants before the jury.

SO ORDERED.